Wilson *v.* Van Buren County *et al.*

(*Nashville*, December Term, 1953.)

Opinion filed May 21, 1954.

C. C. GEER and CAMP & CAMP, all of Sparta, for plaintiff in error.

NOONE, TANNER & NOONE, of Chattanooga, for Van Buren County.

H. H. McCAMPBELL, of Knoxville, for Eureka Cas. Co.

MR. SPECIAL JUSTICE WELDON B. WHITE delivered the opinion of the Court.

The plaintiff in error, Clint Wilson, filed a petition in the Circuit Court against the defendants in error in which he sought to recover total and permanent disability benefits as provided under the Workmen's Compensation Act of the State of Tennessee. He sought in particular to recover benefits allowed for an occupational disease. He averred in the petition that he was suffering from the occupational disease of silicosis. In aid of his claim he

invokes subsection (d) of Section 6852 of the Code of Tennessee, as follows:

"An employee has an occupational disease within the meaning of this law if the disease or condition has developed to such extent that it can be diagnosed as an occupational disease.

"* * * The partial or total incapacity for work or the death of an employee resulting from an occupational disease as herein listed and defined shall be treated as the happening of an injury by accident * * *."

"The right to compensation for occupational disease shall be forever barred unless suit therefor is commenced within one year after the beginning of incapacity for work resulting from an occupational disease * * *."

On or about September 20, 1952 the petitioner received an x-ray report from the Department of Public Health of the State of Tennessee stating that his condition had been diagnosed as silicosis. Approximately sixteen days later and on October 6, 1952 he filed his petition for compensation as above set out.

The defendants deny that the petitioner was suffering from silicosis upon the date that his suit was filed, or at any time prior thereto. They contend further that if he was so suffering that the onset of his condition occurred in January or February 1951 and that his cause of action accrued on that date. They specifically plead and rely upon the one year statute of limitations above referred to, and further aver that the petitioner did not give the written notice of his condition required by subsection (d) aforesaid, providing as follows:

"Within thirty (30) days after the first distinct

manifestation of an occupational disease the employee, or someone in his behalf, shall give written notice thereof to the employer in the same manner as is provided in the case of a compensable accidental injury.''

The trial judge found all issues of fact in favor of the petitioner, but found that his action had been barred by reason of his failure to give the written notice referred to above, and by reason of his failure to bring his suit within one year, as required in the language of the act above quoted.

The petitioner appealed, and has assigned as errors the action of the trial court as aforesaid.

In order to dispose of these assignments of error it will be necessary to quote briefly the facts in the case.

Clint Wilson began working for Van Buren County on June 27, 1949 as a laborer and a rock crusher. He was later promoted to foreman, but this promotion is immaterial to the issues involved herein. At his place of employment there was considerable limestone and sandstone, rock dust or other foreign substance which was breathed by the petitioner and other employees.

During the fall of 1949 the petitioner suffered from an attack of pneumonia, and during his period of convalescence Dr. W. H. Andrews, his personal physician, advised him that he had rock dust on his lungs and that he was suffering from pneumoconiosis. Petitioner advised Ed Rascoe, the Safety Director of Van Buren County, of his condition, and on occasions Rascoe accompanied the petitioner to the office of Dr. Andrews.

Petitioner's condition grew progressively worse with the passing of months and years, until he became permanently and totally disabled during the month of Sep-

tember 1952. At that time the Mobile X-ray Unit of the Tennessee Department of Public Health made an x-ray of his lungs, and it was determined for the first time that he was suffering from silicosis. Immediately upon learning that he was suffering from this disease he notified, in person, the Van Buren County Highway Department through its Commissioner of Highways, Joe Simmons, of his condition. He also notified, in person, the secretary of the highway department, Dorothy Page, of his condition. Joe Simmons testified that he had received this notice from the petitioner.

The doctors who testified in this case all agree that silicosis is a disease of the lungs, resulting from inhaling free silica dioxide over a long period of time. A majority of them agreed that it takes several years for the disease to develop to the extent that it can be properly diagnosed.

Dr. Hamilton, one of the witnesses for the defendants was asked:

"Q. State whether or not it has been known medically for any of these different degrees of silicosis to have developed in less than two or three years. A. No, sir, I do not think they have any on record that has developed in less than, I will say, at least two or three years; that is only in cases where they work in foundries or some place where there is a high content of silica in a closely confined room."

The petitioner had been employed by the county, doing the work above described, for a period of about three years. Dr. W. H. Andrews, his private physician, stated to the petitioner that he had some rock dust on his lungs, and that he was suffering from pneumoconiosis, which is not a compensable disease under the Workmen's Compensation Law. During his period of employment he also

had other examinations by the Mobile X-ray Unit of the Tennessee Department of Public Health and on all occasions his condition was diagnosed as pneumoconiosis until September 20, 1952, at about which time the diagnosis was changed to that of silicosis.

It would appear, therefore, that the petitioner had no notice or knowledge that he was suffering with a disease compensable under the Workmen's Compensation Law until on or about September 20, 1952. Immediately upon being so notified of his condition he transmitted such information to his superiors and to the Safety Director for Van Buren County.

All the medical doctors who testified in the case agreed that an individual might have pneumoconiosis without at the same time having silicosis. As a matter of fact, they were not all in agreement that the petitioner was suffering from silicosis at the time of their examinations after the institution of the suit. They all agree that it is the work of a specialist to diagnose silicosis, and that a general practitioner of medicine would not ordinarily be capable of making a proper diagnosis. Obviously, a person without medical training could not be expected to diagnose his own case. The petitioner was under the care of Dr. Andrews for almost three years, and neither the petitioner nor Dr. Andrews recognized that the petitioner was suffering with silicosis, if in fact he was so suffering. The proof indicates that the petitioner was suffering from pneumoconiosis which finally developed into silicosis, and the fact of the petitioner's condition was made known to him for the first time in September 1952.

Dr. Hamilton testified that the petitioner could not be suffering from silicosis, as the history of his case showed that he had not been exposed long enough. Dr. Water-

man, another specialist, testified that although the petitioner had been exposed only a short time to free silica, that from the x-ray pictures and the time history of the case it was his opinion that the petitioner had contracted silicosis. Dr. Andrews had never reached the diagnosis of silicosis. It would seem, therefore, that a laborer of limited education and none at all in the field of medicine should not be required to diagnose his own case, since men of fine medical background were in disagreement, even at the trial date, of the true condition of the petitioner.

The trial court found that the petitioner was suffering from the occupational disease of silicosis, and we are satisfied with this finding in this regard.

In the case of *Ogle* v. *Tennessee Eastman Corp.*, 185 Tenn. 527, 206 S. W. (2d) 909, 911, our Court said: "No reasonable construction of law could require that complainant give notice of a disability which he did not know existed or which did not in fact exist, or that he should file suit for a disability before he had suffered it." In the case sub judice, the petitioner did not know that he was suffering from the early stages of silicosis, and the law did not require him to seek expert medical authority to determine the cause of his disability. The law required the petitioner to exercise only ordinary care in an effort to determine the cause of his disability. We believe that he did what any reasonable man would have done under like or similar circumstances. He consulted his personal physician, who advised him that he was suffering from pneumoconiosis and never at any time stated that he was suffering from a disease compensable under the Workmen's Compensation Act, until the latter part of September 1952. Immediately upon learning

that he was suffering from an occupational disease, as defined by the Act, he notified his employer and brought suit within sixteen days thereafter.

In the case of *Holeproof Hosiery Co.* v. *Wilkins*, 194 Tenn. 683, 254 S. W. (2d) 973, 974, the Court, in speaking through Mr. Chief Justice NEIL in construing the applicability of the statute of limitations to the facts in that case, an occupational disease case, said: ''The statute is not tolled as of the date of the commencing of the disease, for that would be impossible to determine with any degree of accuracy, but is tolled at the beginning of 'incapacity for work'. * * * the Legislature did not intend to burden the injured employee with the duty of proving when a compensable injury 'commenced', for in many cases no one could say when his right of action actually accrued, i. e. his 'incapacity for work'.''

■ Certainly, in the instant case, the petitioner had no right or cause of action prior to September 20, 1952, when it was discovered that he had silicosis. Had he commenced his suit in 1949 at the time he was suffering from pneumonia or pneumoconiosis, the defendants would have in all probability been successful in their efforts to prove that the petitioner at that time was not suffering from any occupational disease compensable under the Workmen's Compensation Law. The petitioner had no right of action, according to the weight of the proof, until on and after September 20, 1952.

■ With reference to that portion of Section 6852 of the Code of Tennessee which requires the giving of notice within thirty days after the first distinct manifestation of an occupational disease, we believe that the legal conclusion reached by the trial court from the facts presented was erroneous. The notice required is the

same "as is provided in the case of a compensable accidental injury."

On several occasions the Court has had before it the construction to be placed upon Section 6872 of the Code with reference to the notice required in the case of a compensable accidental injury. In the case of *Ware* v. *Illinois Central R. Co.*, 153 Tenn. 144, 281 S. W. 927, the Court held that the failure to give the written notice required by Section 6872 was reasonably excused where the employee told his foreman when the accident occurred. Again, in the case of *Marshall Construction Company* v. *Russell*, 163 Tenn. 410, 43 S. W. (2d) 208, the Court held that knowledge of the employer and lack of prejudice are elements to be considered by the Supreme Court as affecting the reasonableness of the excuse made for failure to give the required notice. Also, actual knowledge of the accident at the time by the representatives of the employer, evident ignorance on the part of the petitioner without apparent thought of the consequences of the accident, or occupational disease, are matters to be considered in determining whether or not the petitioner should be excused from giving the required notice. *Crane Enamelware Company* v. *Dotson*, 152 Tenn. 401, 277 S. W. 902.

While this Court has always considered itself to be bound by the findings of the trial judge on questions of fact when supported by any material evidence, it has not considered itself to be bound by the conclusions drawn by the trial court from undisputed facts. Therefore, it has always reserved unto itself the prerogative of reaching a different legal conclusion from that of the trial court on the same findings of fact. *King* v. *Buckeye Cotton Oil Co.*, 155 Tenn. 491, 296 S. W. 3, 53 A. L. R. 1086.

■ We are constrained to hold that a liberal construction of the act, and in furtherance of the sound public policy that dictated the passage of the legislation in the first instance, requires us to hold that the petitioner should be excused from giving the thirty-day written notice required by the act for the reasons hereinabove set out.

In conclusion, we quote again from Section 6852, as follows: "An employee has an occupational disease within the meaning of this law if the disease or condition has developed to such an extent that it can be diagnosed as an occupational disease." Competent medical authorities diagnosed the petitioner's condition as silicosis for the first time on or about September 20, 1952. The petitioner brought his suit within sixteen days thereafter. It was on or about this date that his total incapacity for work, within the meaning of the statute, commenced and we fix this as the date upon which the one-year statute of limitations commenced to run.

While it would no doubt aid the Court had the provisions of the Workmen's Compensation Law relating to occupational disease been more carefully drafted, nevertheless the legislative intent in the wording of Section 6852(d) of the Code is not doubtful. The Legislature could not have intended, by the language used, that an employee should be required to commence suit for an occupational disease at a time prior to any actual or constructive knowledge on his part that he had the disease. So long as an employee has no actual knowledge that his incapacity is due to an occupational disease, and so long as a reasonable man would not have been put on actual notice, then the incapacity could not be said to result "from an occupational disease" within the mean-

ing of the act; and the statute of limitations will not commence to run until such notice is present.

The action of the trial court is therefore reversed and this case is remanded to the Circuit Court for proceedings not inconsistent with this opinion. The costs of this appeal are adjudged against the appellees. The record is not clear as to which of the insurance companies should be burdened with paying the total and permanent disability benefits to which the petitioner is entitled, and therefore this feature of the case is also remanded to the trial court for determination.