CLINT WILSON *v.* VAN BUREN COUNTY *et al.*

(*Nashville,* December Term, 1954.)

Opinion filed April 7, 1955.

CAMP & CAMP and C. C. GEER, all of Sparta, for plaintiff in error.

H. H. McCAMPBELL, Jr., of Knoxville, and NOONE, TANER & NOONE, of Chattanooga, for defendants in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This case was decided by the Court at a former term in favor of the injured employee, the opinion being reported in 196 Tenn. 487, 268 S. W. (2d) 363, 367. The judgment of the trial court was affirmed. But the case was remanded for an additional finding, the concluding statement in the opinion being as follows:

"The record is not clear as to which of the insurance companies should be burdened with paying the

total and permanent disability benefits to which the petitioner is entitled, and therefore this feature of the case is also remanded to the trial court for determination.''

Upon the remand the trial judge, after giving consideration to the original record, and without hearing any additional evidence, found that the Eureka Casualty Company was liable for the compensation award in favor of Clint Wilson. From this judgment the Eureka Casualty Company has appealed to this Court and assigned errors. The petitioner Wilson also excepted and was granted an appeal, contending that the appeal granted the Eureka Casualty Company forced the petitioner to appeal ''in order that his interest might be protected by the Supreme Court should the Court find that the insurance carrier, Coal Operators Casualty Company, is liable for the benefits rather than the Eureka Casualty Company.''

Briefly stated, the Eureka Casualty Company contends that the trial court erred in holding and adjudging it to be liable for the total amount of the award for reasons hereinafter to be stated and considered.

The petitioner, Clint Wilson, contends that the trial court was in error ''in failing and refusing to enter a judgment against all three of the defendants, Van Buren County, Coal Operators Casualty Company and Eureka Casualty Company.''

The original judgment in favor of Wilson represented an award, under the Workmen's Compensation Law, Code, Sec. 6851 et seq., for a disability resulting from an occupational disease, to wit, silicosis. His right to this award was contested by Van Buren County and its insurance carriers, to wit, Coal Operators Casualty Company and Eureka Casualty Company. The trial judge dismissed

182

the case on the ground of petitioner's failure to give written notice and by reason of his failure to bring suit within one year. This holding of the trial court was reversed, and the case was remanded for the court to decide which of the two insurance carriers should be held liable for the award as above stated.

We will refer to the parties on this appeal as follows: Coal Operators Casualty Company as "Operators" and Eureka Casualty Company as "Eureka", and the injured employee as "petitioner" or "Wilson".

The question of liability of one or the other of these insurance carriers, or both, is more or less confusing by reason of the fact that Eureka succeeded Operators as a carrier of the insurance. Eureka contends that petitioner's occupational disease was known by him while Operators' policy was in full force and effect, and it should not bear the entire burden because it happened to be the carrier when it was later definitely and conclusively determined that petitioner was suffering from the disease. It was because of the foregoing controversy between these insurance carriers that a remand of the case was required.

Responding to this issue the trial judge found the following as the true facts:

"Coal Operators Casualty Company was the Workmen's Compensation insurance carrier for defendant, Van Buren County, at all times material herein up to and including midnight of June 14, 1952; thereafter, at all times material herein, defendant, Eureka Casualty Company, was such insurance carrier. That during the year 1951 petitioner suffered a disability and was off from work from October 16, 1951 to January 15, 1952; that said disability was the result of

silicosis then existing, but apparently unknown to petitioner, thereafter he worked more or less continuously from January 16, 1952 to and including September 29, 1952. On September 20, 1952, the petitioner was advised for the first time by competent medical authorities that he had silicosis and thereafter, on September 29, 1952 he quit work and gave notice of his condition to his employer; sixteen days later he brought this suit. The statute of limitation of one year would commence as of the date of September 20, 1952 and petitioner was not required to institute suit for compensation benefits under the statute for silicosis, or gave notice of the existence of such disease, until he had knowledge or learned of that fact by competent medical authorities and the record indicates that petitioner did receive such information for the first time on or about September 20, 1952 and there is not sufficient proof of record to support his right or cause of action prior to that date.''

The parties moved the court for a new trial based upon alleged error in the above finding of facts; and the errors assigned herein complain of the same errors, as well as legal conclusions of the court.

Considering the briefs of the parties, as well as oral argument of counsel, it seems that Eureka is carrying the burden of convincing the Court of the correctness of its contention; and this is as it should be since the judgment of the trial court is at least prima facie presumed to be correct.

We feel that we are bound by the facts as found by the trial judge. But Eureka complains that it was error for the court to adjudge liability upon the theory it was shown to be the carrier on the date (September 20, 1952)

"when petitioner was advised by competent medical authorities that he had silicosis, which date was after the date upon which Eureka first became the insurance carrier of petitioner's employer"; and that Operators should be held liable because the petitioner's cause of action accrued when Operators' policy was in full force and effect.

Operators' policy expired on June 15, 1952, and on the same date Eureka's policy became effective.

Counsel for Eureka relies upon Section 6852(d), Supplement to the Code of Tennessee 1950, reading as follows:

"When an employee has an occupational disease that is covered by this law as amended, the employer in whose employment he was last injuriously exposed to the hazards of the disease, and the employer's insurance carrier, if any, at the time of the exposure, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier."

We see in the foregoing Code Section an effort by the Legislature to fix a definite time when a compensable injury shall be determined, and those who shall be held liable for its payment. The Act contemplates two or more employers and more than one insurance carrier. The framers of this legislation fully recognized the difficulty confronting employees, employers and their insurance carriers, as to which of them should be liable for the payment of a compensable claim. The manifest intention of the Legislature was to remove the issue from the field of speculation as far as possible. If an employee is entitled to compensation under the statute he should not be required to make an election as to which insurance

carrier he may seek to hold liable for his injury, as where he was injuriously exposed to the disease when both policies were in force. In *Holeproof Hosiery Co. v. Wilkins*, 194 Tenn. 683, 254 S. W. (2d) 973, 974, involving a claim for an occupational disease, it is said:

"Surely the Legislature did not intend to burden the injured employee with the duty of proving when a compensble injury 'commenced' for in many cases no one could say when his right of action actually accrued, i. e. his 'incapacity for work'."

Thus far we have no decision in this State on this question other than our cases which decide when a claimant's right of action accrues.

In the case at bar the counsel for Eureka insists that the petitioner Wilson's cause of action accrued during the time when Operator's policy was in full force and effect. But this question was foreclosed by the Court's former opinion in which it was expressly decided that Wilson's cause of action accrued as of September 20, 1954.

The statute, above quoted, undertakes to solve the problem by providing that the employer in whose employment he (the employee) was *last injuriously exposed to the hazards of the disease,* and the insurance carrier at that time, is liable without any "right to contribution from any prior employer or insurance carrier." We feel that the statute is most persuasive authority in deciding this controversy between Eureka and Operators.

Considering the cases cited from other jurisdictions, we think the excerpt from Larson's Workmen's Compensation Law, p. 477, Vol. 2, as it appears on appellant's brief, has no application because it is contrary to the express provisions of the statute quoted in this opinion.

*Outboard Motor Co.* v. *Industrial Commission,* 206 Wis. 131, 239 N. W. 141, involved a case of tuberculosis, and is likewise contrary to the statute, holding the former employer liable.

In *Employers' Mut. Liability Ins. Co.* v. *McCormick,* 195 Wis. 410, 217 N. W. 738, the sole question presented was which was liable of three insurance companies that were successively the carriers of a compensation risk. The injured employee was suffering from an occupational disease. The court took notice of the difficulty the employee would have in giving legal notice of his disability in case of an occupational disease, and held the company liable that carried the risk at the time disability accrued, i. e., when the disease rendered him unfit for work, and "a wage loss". In *Falk Corp.* v. *Industrial Commission,* 202 Wis. 284, 232 N. W. 542, it is held, "Employer's insurance carrier is not relieved from liability by fact that employee's disability began prior to date of policy."

While counsel for Eureka has urged upon us the rule of equitable apportionment of the burden as between the insurance carriers, as held in some jurisdictions, we are constrained to so interpret our Workmen's Compensation Law as will best serve the interests of employees who suffer from an occupational disease, rather than attempt an adjustment of their rights in the light of equities that may exist between two or more carriers of their employer's compensation insurance.

The assignments of error by both appellant and appellee are overruled, and the judgment pronounced by the trial court is affirmed.