Housley *v.* American Mut. Liability Ins. Co. *et al.*

(*Nashville,* December Term, 1953.)

Opinion filed July 23, 1954.

G. F. Bedenbaugh, Charles L. Cornelius, Jr., and George H. Armistead, Jr., all of Nashville, for defendants (appellants).

Wm. H. Woods and Goodpasture, Carpenter & Dale, all of Nashville, for complainant (appellee).

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is an appeal from the Chancery Court of Davidson County from a decree awarding compensation pursuant to the Workmen's Compensation Act, Williams' Code, Sec. 6851 et seq., by reason of the disability and death of complainant's husband, Willis Joseph Housley, who died on March 28, 1951, as the result of silicosis and tuberculosis.

The contention of the defendant is that Mr. Housley died as the result of an occupational disease which he contracted prior to the effective date of Chapter 139 of the Public Acts of 1947, Williams' Code, Section 6852 (d). The effective date of the Act was March 12, 1947. The Act expressly provides: ''An occupational disease which an employee has on the effective date of this amendatory Act shall not be covered hereunder.'' Since it was fully realized by the Legislature that it would be extremely difficult to determine at what time, i. e. a particular calendar date, an employee may be suffering from an occupational disease, such as *silicosis,* the Act made the following provision: ''An employee has an occupational disease within the meaning of this law if the disease or condition has developed to such an extent that it can be diagnosed as an occupational disease.'' The defense made

to the bill of complainant was that the deceased had contracted the disease of silicosis prior to March 12, 1947.

The record shows that Housley had worked for the Victor Chemical Works for more than 20 years until February 3, 1950. During this entire time he worked most every day and was not aware of any serious disability until he quit work on the above date. In the early part of 1950 his family doctor, Dr. Daugherty, had treated him for asthma. He was later referred to Dr. Thomas Frist, who after making an extensive examination, taking x-ray pictures of his chest, diagnosed his trouble as tuberculosis. He was then sent to the Davidson County Tuberculosis Hospital where he remained for about a year and until his death. It appears that Dr. R. R. Crowe, Superintendent of this hospital, and his assistant, Dr. R. L. McCracken, and Dr. C. C. McClure, an x-ray specialist, all concurred in the view that Mr. Housley had tuberculosis. Later on, however, Dr. Crowe, upon being told of the nature of Mr. Housley's work, being constantly exposed to dust, suspected silicosis. Upon his death an autopsy was held, which confirmed very definitely that the patient had silicosis, and this with the complication of tuberculosis, caused his death.

The entire dispute involves the time when Mr. Housley contracted the disease, and whether or not it had developed to such an extent on March 12, 1947, that it could have been ''diagnosed as an occupational disease.''

The testimony is at variance as to the amount of silicon at the Victor Chemical Works' plant, the defendant making the claim that it was more or less infinitesimal. One of its witnesses, Carroll, Chief Chemist of Victor, made the statement that after 1947 ''it was very low'', that ''street dust would have ten or fifteen times as much

silica''. But the witness testified only as to finished products manufactured by the defendant, and not to silica content in the air in and near its plant.

The record discloses that deceased was exposed to conditions conducive to the contraction of silicosis. The complainant, Mrs. Margaret Housley, testified that her husband would come home with great quantities of sand, dirt and grit in his hair, ears, nostrils, eyebrows and clothes to such an extent that when his clothes were washed there was left large deposits of sand, grit and dirt in the tub. Moreover the walls of the building showed deposits of great quantities of dust which resulted from defendant's operation. Dr. Crowe testified that sand was a cause of silicosis and some persons were more susceptible to the disease than others.

We think it definitely appears in the record that Mr. Housley was exposed to dust containing silica prior to 1940. But he had not at that time contracted silicosis. The conditions under which he worked, as shown by the testimony of Mrs. Housley, detailed above, that his hair, ears, nostrils and clothing were saturated with dust and dirt, was after 1947, certainly after 1940. Moreover Dr. Crowe testified that not every person who has some silica in his or her lungs necessarily has silicosis. The weight of the medical testimony is that it is very difficult, some say ''impossible'', to determine when the disease manifests itself so that it can be diagnosed as such. It appears that after many tests and x-ray examinations by Dr. Frist, Dr. Crowe, Dr. McCracken and Dr. McClure, all of exceptional ability, his trouble was thought to be tuberculosis. It was not until shortly before his death that Dr. Crowe suspected silicosis.

After considering and analyzing all the evidence the learned Chancellor reached the following conclusion:

"The Court is further of opinion that, since at least four eminent authorities in the medical profession, who are especially competent in the diagnosis of tuberculosis, silicosis and other pulmonary diseases, continually diagnosed this man's trouble as being tuberculosis until about thirty days before his death, at which time Dr. Crowe diagnosed it as silicosis, it would seem that the weight of the evidence supports the contention of the complainant that the complainant's husband died of silicosis contracted in the course of his employment and which disease was not present in such form as to be diagnosed as such with reasonable certainty until after March 12, 1947, and that she is, therefore, entitled to recover."

We reach the same conclusion after giving full consideration to the entire record. The instant case is controlled by the statute, Code Sec. 6852(d), 1950 Supplement, and *Greener v. E. I. Du Pont De Nemours & Co.,* 188 Tenn. 303, 219 S. W. (2d) 185. See also the case of *Wilson v. Van Buren County,* Tenn., 268 S. W. (2d) 363, and cases cited.

The defendant relies on *McClung v. National Carbon Co.,* 190 Tenn. 202, 228 S. W. (2d) 488, as controlling. But with all deference to counsel we find it differs from the case at bar. In that case the record shows that the employee quit work a month before the occupational disease was made compensable under the Act. In these circumstances he could not claim the benefits of the Act.

█ It is next insisted by the defendant that the Chancellor erred in awarding to the widow compensation which had accrued and was payable prior to her husband's death, i. e. from March 3, 1950, to March 28, 1951.

But in this the counsel is mistaken. Under Code Section 6869 compensation claims of creditors of the injured employee, the same as proceeds of an insurance policy, are exempt. Thus in *Hughes* v. *Elliott,* 162 Tenn. 188, 190, 35 S. W. (2d) 387, it is said:

"The agreement between the employer and employee is in the nature of an insurance contract. *Smith* v. *Van Noy Interstate Co.,* 150 Tenn. 25, 262 S. W. 1048, 35 A. L. R. 1409; *Crane Enamelware Co.* v. *Dotson,* 152 Tenn. [401] 408, 277 S. W. 902; *Hartwell Motor Co., Inc.,* v. *Hickerson,* 160 Tenn. [513] 528, 26 S. W. (2d) 153."

We think the accrued payments referred to were payable to the widow, and clearly authorized. In *Byrd* v. *Pioneer-Jellico Coal Co.,* 180 Tenn. 396, 397, 175 S. W. (2d) 542, it was held:

"That portion of a compensation award to an employee with dependents which has accrued and is unpaid at his death is exempt from the claims of the employee's creditors and passes to employee's widow and minor children free from creditors' claims. Code 1932, § 6869."

The assignments of error are overruled and the Chancellor's decree is affirmed. The cause is remanded for proper enforcement of the decree.